## STATE OF FLORIDA v. KIRCHNER
### Case No. 84-16630MM10
County Court, Broward County

January 15, 1985

### APPEARANCES OF COUNSEL

**Gary Ford,** Assistant State Attorney, for plaintiff.

**Carl H. Lida** for defendant.

### OPINION OF THE COURT

STEVEN G. SHUTTER, County Judge.

This cause came to be heard on the Defendant's Motion to Suppress and this Court having reviewed the Motion, heard the testimony of the expert witnesses for both sides, received the documentary evidence, considered the arguments of counsels, and being otherwise fully advised, the Court finds that:

1. On August 6, 1984, the Defendant was stopped and arrested in

Broward County, Florida for driving under the influence of alcoholic beverages in violation of Florida Statute 316.1931.

2. Pursuant to the arrest the Defendant was transported to the Breath Alcoholic Testing Unit (BAT-Mobile) where he gave a breath sample. The sample was collected and tested by a Model 4011-As-A Intoxilyzer instrument under the supervision of the Broward Sheriff's Office.

3. Florida Statute 316.1932(1)(a) provides that any person who accepts the privilege to drive a motor vehicle within Florida is deemed to have given his implied consent to submit to an approved Chemical Test of his breath.

4. Florida Statute 316.1932(1)(f) delegates to the Department of Health and Rehabilitative Services (H.R.S.) the authority to promulgate rules and regulations governing the testing procedures and approval of specific testing equipment for chemical breath tests. Pursuant to such authority H.R.S. promulgate Rules 100.42 which specifically authorizes several various breath testing instruments for use in Florida including the Intoxilyzer models 4011-A, 4011-AS and 4011-AS-A.

5. The Defendant's expert witness, Norman Brager, testified as to the operation and functioning of the Intoxilyzer. The manufacturer's operation's, manual and technical specifications were introduced into evidence.

6. The State called Dr. Ronald Wright, the Broward County Medical Examiner and George T. Duncan, a Chemist with the Broward County Sheriff's Office who testified as to what defines a chemical test under the present state of chemistry and toxicology.

7. The Court finds as a matter of fact and proof that the Intoxilyzer operates with infrared light and spherical mirrors by measuring absorption of such infrared light at specific wavelength levels corresponding to the particular characteristics of alcohol. No chemical reaction occurs. No change occurs in the chemical composition of the breath sample. No chemicals whatsoever are used.

8. The Defendant urges a restrictive meaning of the term *chemical test*, to wit: an actual chemical reaction must occur or an analysis must be made employing extrinsic chemicals. However, the expert testimony reveals that modern chemistry recognizes a broader definition covering both reactive and non-reactive tests as chemical tests. The great majority of modern quantitative testing in chemistry by tests identifying and analyzing chemical compounds. by their physical properties. A common method is infrared spectrography. These modern methods of

136

chemical testing involved no chemical reactions, introduction of extrinsic chemicals or a change in the properties of chemical being tested.

IT IS HEREBY ORDERED AND ADJUDGED that,

1. This Court finds that the term *chemical test* as used in Florida Statute 316.1932 means any properly recognized analysis of the chemistry of the breath to determine the Defendant's blood alcohol content and was not intended to refer to the *method* of testing. Therefore, the Intoxilyzer, which performs its analysis by infrared spectrography rather than an actual chemical reaction, does in fact perform a *chemical* test within the meaning of Florida Statute 316.

2. The Motion to Suppress is hereby denied.